DECISION
{¶ 1} Relator, Cecelia Peagler, filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its orders which deny her an award of temporary total disability ("TTD") compensation.
 {¶ 2} In accord with Loc. R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. *Page 2 
The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we deny the requested relief.
 {¶ 3} Counsel for relator has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. The case is now before the court for review.
 {¶ 4} Relator was injured in 1997. Her claim was initially recognized for "left cervical and trapezius strain." It was later expanded to include "cervical degenerative disc disease at C4-5 and C5-6." She has worked very little since 1997.
 {¶ 5} Almost ten years after her injury, relator, for the first time, filed a motion requesting TTD compensation. The commission denied the motion for a variety of reasons. Those reasons included the fact she requested compensation outside the two year period allowable, a failure to prove the current inability to resume her former employment was causally related to the injury, and a finding that relator had abandoned the workforce.
 {¶ 6} The magistrate found all of these reasons were supported by the evidence before the commission and the court. The objections filed on behalf of relator contest all these issues.
 {¶ 7} Addressing the issue of voluntary abandonment of employment first, relator was injured on May 16, 1997. She apparently attempted to work for approximately one month thereafter. There is no independent verification of her attempting to work after June 1997. Relator provided an affidavit in which she swore that she attempted to work again for less than a week sometime in 1998 but was unable to continue because of neck *Page 3 
pain. A staff hearing officer ("SHO") conducting a hearing on September 10, 2007 interpreted relator to be saying that she voluntarily resigned her former employment one week after her injury and sought no new employment afterward.
 {¶ 8} Nothing indicates relator sought to work after 1998 — nine years before she filed a request for TTD compensation. The SHO who heard her testimony and conducted the hearing on September 10, 2007, could reasonably conclude that she voluntarily abandoned all employment long before she sought TTD compensation. Some evidence clearly supported that conclusion.
 {¶ 9} Relator's abandonment of employment cut the causal connection between her injury and the time for which she sought TTD compensation. Her failure to work and seek work for such a sustained period of time allowed the result before the commission.
 {¶ 10} The abandonment of employment moots the issue of when her entitlement to TTD compensation could have begun. It also moots the other issues related to whether her not working was caused by her 1997 injury.
 {¶ 11} As a result, the objections to the magistrate's decision are overruled. The findings of fact and conclusions of law contained in the magistrate's decision are adopted. The request for a writ of mandamus is denied.
Objections overruled; writ denied.
 BROWN and SADLER, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on July 17, 2008 IN MANDAMUS {¶ 12} Relator, Cecelia Peagler, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for temporary total *Page 5 
disability ("TTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact: {¶ 13} 1. Relator sustained a work-related injury on May 16, 1997, and her claim was originally allowed for "left cervical and trapezius strain." At the time of her injury, relator was 54 years old.
 {¶ 14} 2. Relator began treating with Brian Nobbs, D.C., in December 2002. Copies of Dr. Nobbs' charts, office and examination notes are contained in the record at pages 6 through 47. Relator saw Dr. Nobbs every few days and his treatment included manipulation, physical therapy, and occasional injections. Subjectively, relator indicated increased pain at different times during this treatment period. In an examination note dated June 13, 2003, Dr. Nobbs indicated that relator was experiencing increased neck and trapezius pain following a three-month separation of care. His assessment was chronic aggravation of 1997 work injury and he noted that relator had "established permanency for this injury." In examination notes from August 2003 through June 2005, Dr. Nobbs indicated that relator's condition was either chronic improved, chronic improving, or chronic with permanency. Several times Dr. Nobbs indicated that relator needed continued support of care for her condition. In June 2004, Dr. Nobbs noted that relator had permanent residuals and experiences periodic flare-ups.
 {¶ 15} 3. On August 2, 2005, relator filed a motion seeking to amend her claim to allow the conditions of "cervical degenerative disc disease at C4-5 and C5-6." In support, relator submitted an X-ray and the March 11, 2005 report of Dr. Nobbs. In that report, Dr. Nobbs explained that the degenerative changes were not the result of normal *Page 6 
aging because relator had increased levels of degeneration in the cervical area compared to other areas. Dr. Nobbs stated:
 Based on the chronic nature of Cecilia Peagler's condition and the fact the condition has required ongoing treatment, there is a great degree of medical certainty that any future cervical problems will be due wholely [sic] or partially to the 05/16/1997 work injury. In other words, this work injury is a proximate cause of current decrease in ability to perform activities of daily living, and will be a proximate cause of any future cervical problems, since permanent impairment has been established.
 {¶ 16} 4. Relator's motion was heard before a district hearing officer ("DHO") on September 19, 2005 and was granted. As such, relator's claim was amended to include the condition of "cervical degenerative disc disease at C4-5 and C5-6."
 {¶ 17} 5. Thereafter, relator sought an increase in her percentage of permanent partial disability. Relator submitted the July 28, 2006 report of Dr. Nobbs who opined that relator now suffered from a 23 percent whole person impairment. Relator also submitted the September 14, 2005 report of V.P. Mannava, M.D., who examined relator on February 15, 2006. After noting the medical evidence which he reviewed, Dr. Mannava described relator's self-reported level of pain as follows:
 She is a well-developed, well-nourished somewhat overweight female. Pain behavior is noted throughout the evaluation. She squints her eyes and constantly voices pain and even with superficial touch and sometimes even prior to touching she voices pain complaints. She holds her shoulders shrugged up. She says she cannot straighten the elbows. However[,] during informal conversation she is able to move her head and neck relatively freely, look right and left and move her arms and dress and undress without any difficulty.
 {¶ 18} Upon examination, Dr. Mannava stated: *Page 7 
 In the cervical region there is no spasm or guarding. There is the above[-]described subjective tenderness. Her neck is somewhat shorter than usual. Cervical distraction, compression or Spurling's test could not be done because of her pain complaints.
 Cervical range of motion is tested with inclinometer. Cervical flexion is 60 °, extension 50 °, right and left lateral rotation is 50 ° each, and right and left lateral flexion is 15 ° each.
 No specific neurological deficits are noted in upper extremities. Sensory function for superficial touch is intact throughout. There is no atrophy or wasting. No fasciculations are noted. Strength testing has shown no specific weakness including in elbow flexion, extension, wrist flexion extension, and thumb opposition bilaterally.
 Muscle stretch reflexes are 2+ at biceps and triceps and symmetric right and left.
 {¶ 19} In conclusion, Dr. Mannava noted that relator presented with a significant amount of pain behavior, there were some inconsistencies noted in her cervical range of motion, she had no neurological deficits in her upper extremities, and she never had any surgical procedures or injections for her neck. Dr. Mannava opined that relator had a three percent increase in her permanent partial impairment which would result in a 13 percent whole person impairment for all the allowed conditions.
 {¶ 20} 6. Relator's motion was heard before a DHO on October 11, 2006. The DHO awarded relator a six percent increase for a total whole person impairment of 16 percent.
 {¶ 21} 7. On May 9, 2007, relator filed a motion seeking the payment of TTD compensation beginning August 2, 2003 through an estimated return-to-work date of September 1, 2007. Dr. Nobbs listed her cervical disc degeneration as the condition preventing her return to work. He noted further that she was not at maximum medical *Page 8 
improvement ("MMI"), nor was she a candidate for vocational rehabilitation services. Relator did not note the date she last worked.
 {¶ 22} 8. A physician review was conducted by Judith Wachendorf, M.D., who issued a report dated June 22, 2007. After setting forth the allowed conditions in relator's claim, Dr. Wachendorf noted the medical evidence which she reviewed, which included Dr. Nobbs' treatment notes and reports. Thereafter, Dr. Wachendorf concluded:
 I have read and accepted medical information in the file. * * * In my opinion[,] medical information in the file is insufficient to support a period of disability from 8/2/03 to 9/1/07 as being related to the 5/16/97 injury. This is based on documentation of a chronic ongoing condition with permanency during the requested time period. * * *
 Specifically, Dr. Wachendorf provided her rationale: Requested date 8/2/03 does not have anything specific that would necessitate being off work; notes from July 29th to August 22 have a checklist as "chronic" and "exacerbation" is not checked off during this time period; further, re-evaluation on 9/4/03 by Dr. Nobbs gives the assessment: "chronic 1997 injury with permanency."
 C92s for permanent partial impairment was given in 1998, application for increase 9/26/05, opinion of permanent partial impairment percentage 2/28/06, and exam by POR Dr. Nobbs who gave a permanent percentage on 7/28/06, during time requested.
 There are notes with subjective complaints of flare ups or exacerbations 1/4/05, 3/9/05, 6/28/05, 7/28/06, 11/9/06, 12/1/06 but there is no documentation of any objective changes in the claimant's exam findings, no changes in treatments besides chiropractic passive treatment and some exercises, and the only other 2 exams performed by independent physicians Dr. Chavez 1998 and Dr. Mannava 2006 both noted marked tenderness to even light palpation of the neck, therefore[,] in my opinion[,] there is insufficient *Page 9 
objective evidence to support periods of disability during these subjective exacerbations of her chronic condition.
 {¶ 23} 9. Dr. Nobbs issued a report in response to the report of Dr. Wachendorf. Specifically, Dr. Nobbs stated that his exam findings provided objective proof that relator suffered aggravations on the dates noted in Dr. Wachendorf's report. Further, Dr. Nobbs stated:
 I considered Ms. Peagler MMI on the morning of 7-28-06 when I did my permanent partial exam on her. However, she suffered an aggravation of her condition that day, possibly due to her exam that morning. As Dr. Wachendorf noted, Ms. Peagler also suffered aggravations of her condition on 11-9-06 and 12-1-06.
 Ms. Peagler's requested period of disability is supported by her x-ray findings, exam findings, allowed diagnoses and subjective complaints.
 The fact that her condition has continued to improve in response to treatment despite her numerous noted aggravations substantiates that she has yet to reach MMI. Ms. Peagler has a chronic work related injury which will leave her with permanent residuals. However, Ms. Peagler's allowed degenerative conditions have resulted in instability leaving her somewhat prone to aggravations of her condition.
 As described above, Ms. Peagler suffered an aggravation of her condition on 7-29-03 which necessitated her requested period of temporary total due to a new and changed circumstance.
 Ms. Peagler has continued to improve in response to treatment however, her recovery has been slowed by her documented aggravations.
 At that time[,] it was my professional opinion that Ms. Peagler was unable to perform the job duties of the job at which she was injured on 5-16-97.
 * * * *Page 10 
 Dr. Wachendorf provides no explanation as to how she arrived at the conclusion that Ms. Peagler was able to work as of 8-2-03 despite the fact that Ms. Peagler suffered a severe aggravation of her 5-16-97 work injury as noted in her daily notes.
 Dr. Wachendorf's only rationale for denying temporary total is the fact that Ms. Peagler has a chronic work injury which has previously been awarded permanent impairment.
 * * *
 Ms. Peagler's period of temporary total disability from 8-2-03 to the present was medically necessary due to the allowance of the additional degenerative conditions. According to Ms. Peagler's medical records, it is apparent that Ms. Peagler has not reached MMI due to numerous aggravations and instability and needed time off of work in order for proper healing to occur. * * *
 * * *
 Ms. Peagler's treatment improves her R.O.M. It decreases her myospasm and tenderness. It improves muscle strength of her upper extremity muscles and cervical muscles. Most importantly, it keeps her functioning.
 Finally, as described in great detail with specific references above, Ms. Peagler's period of temporary total disability is clearly related to her 5-16-97 work injury. *
 * * *
 Dr. Wachendorf fails to provide evidence of an intervening/superseding incident or injury which could possibly rule out Ms. Peagler's 5-16-97 work injury as a proximate cause of her current inability to work, due to the severe nature of her diagnoses.
 * * *
 It is not practical for Dr. Wachendorf's opinion to be relied upon as the reason for Ms. Wachendorf's [sic] period of *Page 11 
temporary total disability to be denied. There is not a doctor in the world who can accurately determine a patient's ability or inability to work without examining the patient.
 {¶ 24} 10. Relator's motion was heard before a DHO on July 26, 2007. The DHO denied the requested period of TTD compensation for the following reasons: relator failed to meet her burden of proof establishing that she was temporarily and totally disabled as a result of the allowed conditions for the requested period; there was no evidence in the record establishing that relator was working immediately prior to August 2, 2003, and no information indicating when relator had last worked; and the treatment records from Drs. Nobbs and Mohammand R. Kahn did not explain that relator is being removed from the workforce as a result of the allowed conditions and make no reference in regards to relator's being unable to work as a result of the allowed conditions. The DHO relied upon the report of Dr. Wachendorf as well as the C-84 and the office notes of Drs. Nobbs and Kahn.
 {¶ 25} 11. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on September 10, 2007. The SHO vacated the prior DHO's order; however, the SHO denied TTD compensation for the entire period. Specifically, TTD compensation was denied from August 2, 2003 to May 21, 2005, pursuant to the statute of limitations set forth in R.C. 4123.52. The SHO determined that period of disability was not requested within two years of the onset of the disability. The SHO also denied compensation from May 22, 2005 to the present and continuing. The SHO relied upon the report of Dr. Wachendorf and determined that the requested period of disability was not causally related to the industrial injury. Further, the SHO noted that relator testified at hearing that she voluntarily resigned from her former position of employment *Page 12 
approximately one week after the date of injury, that she has not worked in any capacity since she resigned from her former position of employment, and that she has not sought any employment since she resigned.
 {¶ 26} 12. Relator filed an appeal from the SHO's order and included an affidavit wherein she stated that she did not voluntarily resign from her former position of employment, and that she did attempt to return to work in 1998 but was unable to continue due to severe neck pain.
 {¶ 27} 13. Relator's appeal was refused by order of the commission mailed October 2, 2007.
 {¶ 28} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165. *Page 13 
 {¶ 30} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 31} Relator first argues that the commission abused its discretion by applying the two-year statute of limitations from R.C. 4123.52 to bar TTD compensation from August 2, 2003 to May 21, 2005. Relator contends that her August 2, 2005 request that her claim be additionally allowed for cervical degenerative disc disease should be considered as an application for payment of compensation. For the reasons that follow, this magistrate disagrees.
 {¶ 32} Relator cites State ex rel. General Refractories Co. v. Indus.Comm. (1989), 44 Ohio St.3d 82, in support of this argument. Relator argues that, pursuant to General Refractories, a C-86 request to allow new conditions implies a corresponding request for compensation. However, for the following reasons, this magistrate finds thatGeneral Refractories does not support relator's contention.
 {¶ 33} In General Refractories, Eugene Smith sustained a work-related injury in 1981. In March 1982, Smith's treating physician submitted a report to the employer indicating that Smith had aseptic necrosis of the right femoral head which may be *Page 14 
related to the industrial injury and would prevent Smith from returning to work until approximately May 3, 1982. In response, the employer sent a letter to Smith acknowledging the receipt of the doctor's report stating that it was unable to pay workers' compensation benefits because aseptic necrosis was not an allowed condition in the claim.
 {¶ 34} In June 1983, Smith filed a motion seeking to have his claim additionally allowed for the aseptic necrosis of his right femoral head. Following the hearing, the commission granted the motion and the additional condition was allowed.
 {¶ 35} Thereafter, Smith filed a motion requesting the payment of TTD compensation from March 16, 1982 through August 15, 1985. The commission granted the request for compensation and construed Smith's June 1983 motion seeking to have his claim additionally allowed for aseptic necrosis as an application for compensation.
 {¶ 36} The employer sought a writ of mandamus arguing that the commission abused its discretion by construing his June 23, 1983 request for the allowance of additional conditions as an application for compensation within the meaning of R.C. 4123.52. Specifically, the employer argued that Smith's motion could not be construed as an application for compensation because Smith did not make a specific request for compensation in that motion. The court disagreed and, citingNichols v. Ohio Collieries Co. (1944), 75 Ohio App. 474, stated that "R.C. 4123.52 does not state how an application for compensation must be made. The fact that the application in question did not expressly request compensation is not conclusive of whether it was for compensation. The character of the application is to be determined not only from its contents, but also from the nature of the relief sought and how the parties treated the *Page 15 
application." General Refractories at 83. Thereafter, the court noted that the employer knew at the time Smith filed for the allowance of the additional condition that he had not been working at least since March 16, 1982. Further, in its May 4, 1982 letter denying the additional condition, the employer indicated that its inability to consider the payment of compensation was predicated on its presumption that aseptic necrosis was a nonallowed condition. This refusal from the employer gave rise to Smith's June 23, 1983 motion, in effect, seeking the allowance of the refused compensation. The court found that it was obvious that the parties had treated the application for the allowance of the additional condition as an application for an award of compensation and declined to find an abuse of discretion. As such, the court found that a request for additional allowances can, under certain circumstances, constitute a request for compensation as well.
 {¶ 37} In the present case, with the exception of C-9s seeking the authorization of continued chiropractic treatment, there are no other motions or correspondence between relator and her employer in the record. Further, there is no indication and no assertion has been made that relator had received any TTD compensation since the May 16, 1997 date of injury prior to her filing of either the August 2005 request for additional allowance or the May 2007 request for the payment of TTD compensation. Further, the medical evidence relator submitted in support of both motions lacks any statement from her treating physician that she is unable to work. As such, the magistrate finds that the commission did not abuse its discretion in declining to consider relator's August 2005 request for additional allowances as a request for compensation. *Page 16 
 {¶ 38} Next, relator argues that the record fails to demonstrate that the commission's order was based on any evidence because the report of Dr. Wachendorf was deficient in several respects and could not serve as some competent evidence upon which the commission could rely. Specifically, relator argues that Dr. Wachendorf failed to specifically accept as true all the objective orthopedic findings listed in the reports and records and that she never opined that relator was capable of performing her former job duties.
 {¶ 39} It is undisputed that a physician conducting a file review must accept the allowed conditions and the objective findings contained in the record. In the present case, Dr. Wachendorf specifically stated that she "read and accepted medical information in the file." Further, at the outset of the report, Dr. Wachendorf correctly listed all the allowed conditions. The magistrate finds that the commission did not abuse its discretion in finding that Dr. Wachendorf did accept the allowed conditions and the objective evidence in the record.
 {¶ 40} Relator also argues that, contrary to Dr. Wachendorf's statement, the record contains more than enough objective evidence of her disability.
 {¶ 41} Contrary to relator's arguments, the magistrate disagrees. As noted previously, Dr. Wachendorf identified certain periods of time when relator had an exacerbation. First, Dr. Wachendorf stated that there was no objective evidence in the record indicating a disability as of August 2, 2003. Upon review of the record, relator did not see Dr. Nobbs on August 2, 2003; however, she did see Dr. Nobbs on August 7, 2003. In his office notes, Dr. Nobbs noted that relator continued to have severe pain in her neck and left trapezius muscle, current therapy was not helping and that she *Page 17 
needed refill on her medications. Thereafter, his notes indicate: "PH: Unchanged," "PMH: Unchanged," "PSH: Unchanged," and "FH: Unchanged." Admittedly, as an attorney, I am not aware to what those abbreviations refer. However, it is undisputed that they are all "unchanged." With regard to the additional periods, January 4, March 9, June 28, 2005, July 28, November 9, and December 1, 2006, the magistrate notes that Dr. Nobbs could have indicated whether, on those particular days, relator's condition was better, worse, or the same. Only on November 9, 2006, did Dr. Nobbs indicate that relator was worse, but that after treatment she was better and should continue treatment every one-to-two months. Further, in April, May, and June 2007, Dr. Nobbs noted that relator's condition was worse before treatment and better after treatment.
 {¶ 42} Upon review of the record, the magistrate finds that Dr. Wachendorf was indeed correct to note that the medical evidence lacked objective findings. Dr. Nobbs did not regularly make findings regarding relator's range of motion which would be considered objective evidence and which may have supported her period of disability. The record is devoid of objective evidence documenting the progression of relator's condition. As such, the magistrate finds the report of Dr. Wachendorf does constitute some evidence upon which the commission could rely.
 {¶ 43} Lastly, relator contends that the commission abused its discretion by finding that she had voluntarily abandoned her employment. Relator asserts that she never made such a statement at any hearing, that her affidavit submitted after the hearing unequivocally establishes that she did not voluntarily abandon her employment and that voluntary abandonment must be proven by the employer. For those reasons, *Page 18 
relator contends that it was an abuse of discretion for the commission to make that finding.
 {¶ 44} There is no transcript of the proceedings before the SHO for this court to review. As such, the magistrate cannot say that the commission abused its discretion in finding a voluntary retirement based on relator's testimony. A person's testimony can be found credible and the commission does not abuse it discretion when it relies on testimony given at hearing. While relator submitted her affidavit in support of her appeal from the SHO's order, the commission refused her appeal and the magistrate cannot say that the commission's failure to consider her appeal constituted an abuse of discretion. Lastly, TTD compensation is awarded when the allowed conditions prevent an employee from returning to their former position of employment. If, for whatever other reasons, an employee does not return to work following an injury, the employee is not precluded from returning to that employment due to the allowed conditions but for some other reason. What is apparent from the record is that relator was 54 years old when she sustained the injury, 62 years old when she requested that her claim be allowed for additional conditions, and 64 years old when she requested TTD compensation. There is no evidence in the record that relator received any periods of TTD compensation in the ten years since the date of injury and there is likewise no evidence in the record, other than her affidavit indicating she worked for one week in 1998, to indicate that relator worked, attempted to work, or even wanted to work at all during this period.
 {¶ 45} In State ex rel. Pierron v. Indus. Comm., 172 Ohio App.3d 168,2007-Ohio-3292, this court found that TTD compensation was not payable to a claimant who *Page 19 
had voluntarily retired from the job at which they were employed at the time of the injury and who was not currently working. This court found that the claimant in Pierron had abandoned the entire workforce and was not entitled to TTD compensation because they were not experiencing a "loss of earnings" due to the allowed conditions. Because it cannot be said that the commission abused its discretion by finding that relator voluntarily abandoned her employment, relator was not entitled to TTD compensation since she was not "gainfully employed" and appeared to have abandoned the entire workforce. As such, the magistrate finds that the commission did not abuse its discretion in finding that there was no evidence in the record that relator's allowed conditions were preventing her from returning to her former position of employment given that there was no evidence in the record that she wanted to work and, further, the magistrate cannot say that the commission abused its discretion by stating in the order that relator testified she had voluntarily abandoned her employment.
 {¶ 46} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her request for TTD compensation, and relator's request for a writ of mandamus should be denied. *Page 1